UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Philip M. Salafia,
    *Plaintiff*,

v.

United States of America,
    *Defendant*.

Civil No. 3:07cv312 (JBA)

**RULING ON MOTION TO DISMISS**

Plaintiff Philip Salafia, now proceeding *pro se*, has sued the United States seeking damages for the failure of one of his companies, Internet Crimes, Inc. ("IC"). Invoking the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–80 ("FTCA"), and the federal and Connecticut Constitutions, Salafia alleges that agents and personnel of the U.S. Army failed to properly investigate his complaint that a staff sergeant had improperly interfered with the business of Internet Crimes. The Government has moved to dismiss the case on a number of grounds, arguing that the claims are time-barred, that the negligence allegations fail as a matter of law, that Plaintiff has failed to state claims of constitutional violations, and that his claims are barred by 28 U.S.C. § 2680.

**I.**    **Relevant Background**

According to his amended complaint, Salafia founded IC in 1999 for the purpose of training law enforcement and security personnel in the field of computer crime. (Am. Compl. [Doc. # 43] ¶ 4.) In 2001, he hired Army Staff Sergeant Stephen Pearson, then stationed at Fort Leonard Wood in Missouri, as a trainer for IC's computer-crime courses.

(*Id.* ¶ 5.) But Salafia later realized that Pearson's contributions to the curriculum were merely cribbed from official Army manuals. (*Id.*) Then, Pearson used his knowledge of and access to IC's proprietary materials and started a competing business called the High Tech Crime Institute ("HTCI"). (*Id.* ¶ 6.) Salafia further learned that Pearson was running the business of HTCI using Army resources and while on duty. (*Id.* ¶¶ 6–7.)

On September 22, 2002, Salafia contacted Special Agent Michael Conner at the Army Criminal Investigative Command in Newington, Connecticut, to complain about Pearson's purportedly improper conduct. (*Id.* ¶ 9.) Conner assured Salafia that his investigation would be careful and impartial and that he would begin by seizing Pearson's computers. (*Id.* ¶ 48.) Over the next several months, the investigation proceeded, but not to Salafia's satisfaction, who remained in contact with Conner and also with personnel at Fort Leonard Wood. (*Id.* ¶¶ 49–69.) According to documents attached to the Salafia's first complaint, Conner's preliminary investigation found no "evidence to support the original allegations," but Conner referred the matter to Criminal Investigation Division ("CID") officials at Fort Leonard Wood for any further action they "deemed appropriate." (Pl.'s Ex. 11.) At Fort Leonard Wood, Colonel Timothy Lamb appointed Major Theodore Solonar to conduct the investigation pursuant to Army Regulation (AR) 15-6. (Pl.'s Ex. 40.)

After attempting to obtain updates about the investigation without success, Salafia filed a Freedom of Information Act request in March 2003. (Am. Compl. ¶ 70.) Two months later, he received in response a copy of the Army's investigation documents.

2

(*Id.* ¶ 76; Pl.'s Exs. 39–40.) These documents describe the investigations begun in November 2002 and involving the Fort Leonard Wood CID office, the Inspector General, and the Army Military Police School, which culminated in the finding that Salafia's allegations were "not substantiated." (Pl.'s Ex. 39 at 4.) Salafia contends that these investigations were insufficiently thorough, as illustrated by the fact that he was never interviewed or deposed. (Am. Compl. ¶ 81.)

Salafia "officially appeal[ed]" the outcome of the investigation in June and September 2003, by contacting Conner and other Army personnel. (*Id.* ¶¶ 104–105.) During this time, Lamb told Salafia that the "investigation has been closed." (*Id.* ¶ 106.) Unable to compete with HTCI, Salafia closed IC's operations in September 2003, believing that IC would have been able to stay in business if only the Army had conducted a proper investigation. (*Id.* ¶¶ 108–109.) In October 2003, Salafia spoke with Major Eric Mankel, who expressed surprise that Salafia had not been interviewed in connection with the investigation. (*Id.* ¶¶ 112–13.) Salafia was under the impression that Mankel and other personnel were further investigating the matter, but again received no satisfactory response. (*Id.* ¶¶ 114–32.)

In April 2005, Salafia filed an administrative claim under the FTCA, enclosing "Standard Form 95 along with a 178-page addendum outlining his claim." (*Id.* ¶ 135.) Subsequently, he corresponded with Army personnel at Ford Meade and elsewhere about the progress of his claim. (*Id.* ¶¶ 138–57.) The Army Claims Service denied his claim. (*Id.* ¶ 158.) By letter to Salafia dated September 1, 2006, Colonel Dale Woodling explained

the basis for the denial:

> Upon reconsideration, the denial of your claim is affirmed. In short, our investigation revealed that there were no negligent acts or omissions of United States Government employees acting within the scope of their employment in responding to your allegations regarding Staff Sergeant (SSG) Pearson. I am not persuaded that any United States Government employee owed you a duty or breached any duty in the investigation of your allegations against SSG Pearson beginning on September 20, 2002. You have presented no evidence that convinces me that employees of the United States engaged in a conspiracy, pattern of deceit or deception, or cover-up that was the proximate cause of your injury. I further disagree with your assertion that negligent or wrongful investigations by United States Government employees were the proximate cause of any injury you may have suffered. Moreover, in my opinion, the investigations conducted by United States Government employees responding to your allegations against SSG Pearson were within the discretionary function exception of the Federal Tort Claims Act.

(Pl.'s Ex. 67 at 1.)

Mr. Salafia then filed this FTCA action in February 2007. At the core of his complaint is his contention that, in response to his report of wrongdoing by Pearson, Army personnel within the CID, the Inspector General's office, the Military Police School, and the Army Claims Service failed to conduct proper investigations which caused the failure of Salafia's business, IC. When asked during oral argument whose acts were negligent (or worse) in the course of these investigations, Salafia identified several individuals: Special Agent Conner, who initially heard Salafia's report of wrongdoing (Tr. 30:2); an agent believed to be named Roman, the acting agent-in-charge at Fort Leonard Wood CID (*id.* 38:1–2); Agent Frick, Roman's CID supervisor (*id.* 38:23–25); Colonel Timothy Lamb, the assistant commandant of the Military Police School (*id.* 40:3–5); Major Theodore Solonar,

4

whom Lamb appointed to conduct an AR 15-6 investigation at Fort Leonard Wood (*id.* 42:5–8); Lieutenant Colonel Robert Vasta, of the Inspector General's office (*id.* 43:17–19); Major Mankel, of the Inspector General's office in Virginia (*id.* 48:18–19); and personnel of the Army Claims Service at Fort Meade (*id.* 51:22).

At the Court's request, the Government furnished copies [Doc. # 76] of the military regulations which the Government believes guided the investigations challenged by Salafia, specifically: Army Regulations 195-1 and 195-2, which pertain to criminal investigations generally; the 2002 Manual for Courts Martial, excerpted in relevant part; Army Regulation 15-6, pursuant to which Solonar conducted the investigation at Ford Leonard Wood; Army Regulation 20-1, describing the activities and procedures of Mankel's investigation for the Inspector General; and Army Regulation 27-20, which outlines the handling of administrative claims such as Salafia's. Salafia, agreeing in part that these regulations are controlling, also completed the record from his standpoint by providing a copy of Army Regulation 195-5, which outlines evidence procedures for criminal investigations, and also a copy of his Standard Form 95 administrative claim and accompanying exhibits [Doc. # 77].

Based on this record, Salafia alleges that, by conducting a flawed investigation, the Army personnel identified above negligently and intentionally harmed him and his business, and also violated his constitutional rights to due process and equal protection.[1]

---

[1] As Salafia clarified at oral argument, his state-law tort claims and constitutional claims are premised on the same conduct. (Tr. 60:13–63:9.)

## II. Discussion

### A. FTCA Claims

By enacting the FTCA, the Congress "waive[d] the sovereign immunity of the federal government for claims based on the negligence of its employees." *Coulthurst v. United States*, 214 F.3d 106, 108 (2d Cir. 2000). However, the United States does not waive its sovereign immunity as to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Among other things, this "discretionary function" exception "bars claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." *Fazi v. United States*, 935 F.2d 535, 538 (2d Cir. 1991).

In *Berkovitz v. United States*, 486 U.S. 531 (1988), and *United States v. Gaubert*, 499 U.S. 315 (1991), the Supreme Court clarified the scope of the exception and developed a two-part test for determining whether the challenged governmental conduct falls within the scope of § 2680(a):

> (1) the acts alleged to be negligent must be discretionary, in that they involve an "element of judgment or choice" and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy" or susceptible to policy analysis.

*Coulthurst*, 214 F.3d at 109 (quoting *Berkovitz* and *Gaubert*). As the Court explained in *Gaubert*:

6

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

499 U.S. at 324–25. According to the legislative explanation of § 2680(a), the intent of the Congress that enacted the FTCA was not "to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." *Dalehite v. United States*, 346 U.S. 15, 30 (1953) (quoting the legislative record of the 77th Congress). Thus, even if the conduct by Army investigators which forms the basis for Salafia's complaint was negligent as he alleges, his claims must be dismissed unless the challenged acts fall outside the discretionary-function exception.

Beginning with the earliest cases brought pursuant to the FTCA, courts have repeatedly concluded that investigative functions qualify as discretionary functions to which § 2680(a) applies. In *Smith v. United States*, 375 F.2d 243, 244 (5th Cir. 1967), the plaintiff sought damages for injuries to his business allegedly caused by the United States Attorney's failure to prosecute protesters who boycotted his grocery store. The Fifth Circuit affirmed the district court's dismissal of Smith's FTCA claims on the ground that the governmental action he challenged was subject to the discretionary-function exception. *Id.* at 248. Finding

such action to be inherently discretionary, the court held "that § 2680(a) exempts the government from liability for exercising the discretion inherent in the prosecutorial function of the Attorney General, no matter whether these decisions are made during the investigation or prosecution of offenses." *Id.*

More recent decisions involving claims based on investigative conduct have reached the same conclusion. *Pooler v. United States*, 787 F.2d 868, 869 (3d Cir. 1986), involved claims challenging a Veterans Administration police officer's investigation into narcotics sales at a VA hospital. Affirming the dismissal of plaintiffs' complaint, the court reasoned: "[W]hen the sole complaint is addressed, as here, to the quality of the investigation as judged by its outcome, [§ 2680(a)] should, and we hold, does apply. Congress did not intend to provide for judicial review of the quality of investigative efforts." *Id.* at 871. In a case involving a U.S. Customs inspector's questionable inquiry into a driver's level of intoxication, the Eighth Circuit—citing its earlier statement that "although the federal government has a duty to enforce the law, the means by which it proceeds to do so are protected by the discretionary function exception to the FTCA," *Abernathy v. United States*, 773 F.2d 184, 188 (8th Cir. 1985)—found that this conduct easily fell within the scope of the exception. *Prelvitz v. Milsop*, 831 F.2d 806, 810 (8th Cir. 1987). The First Circuit similarly found that a DEA agent's challenge (via the FTCA) to an internal investigation of leaks implicated "precisely the kind of policy-rooted decisionmaking that section 2680(a) was designed to safeguard," given that "decisions to investigate, or not, are at the core of law

8

enforcement activity." *Kelly v. United States*, 924 F.2d 355, 356, 362 (1st Cir. 1991).

That governmental investigations are the kind of discretionary functions covered by § 2680(a) is confirmed by the scores of other cases in accord. *See, e.g., United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820 (1984) (protecting as discretionary acts the FAA's execution of a "spot-check" program, even where the investigation of a particular aircraft was negligent); *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994) (barring claims based on Customs agents' investigation of plaintiffs); *Blakey v. U.S.S. Iowa*, 991 F.2d 148, 153–54 (4th Cir. 1993) (dismissing claims alleging that the Navy negligently investigated a fatal explosion); *S.E.C. v. Better Life Club of Am., Inc.*, 995 F. Supp. 167, 180 (D.D.C. 1998) (holding "[i]nvestigation and prosecution under § 21 of the Securities Acts [to be] discretionary"); *Wang v. United States*, No. 01-1326, 2001 WL 1297793, at *3–*4 (S.D.N.Y. Oct. 25, 2001) (barring malicious-prosecution claims under § 2680(a) even if there was "an abuse of prosecutorial discretion").

Even more closely on point, in *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 973 (10th Cir. 1994), the Tenth Circuit reviewed one of the same regulations raised by Salafia's claims, AR 15-6, and found that "its use, scope, and requirements are discretionary." In that case, the court found that the regulations governing the Army's investigation of a plane crash did not mandate a specific outcome and that the investigation was thus a protected discretionary function:

> [T]he decisions made by the officers on the Sands Missile Base concerning the AR 15-6 investigation of the crash of Tanker 07 involved a trade-off

9

> between a more complete investigation into the cause of the crash and the resumption of important military missile tests. The decisions made concerning the scope of the investigation, the subsequent release of the crash site, and the return of the crash debris are all decisions protected by the discretionary function exception. Therefore, because appellants' first four tort claims were based on the reasonableness of these decisions, they were properly dismissed by the district court.

*Id.* at 976.

The investigations at the basis of Salafia's complaint qualify as the same kind of discretionary functions which cannot be challenged under the FTCA. After review of the regulations provided by the parties, the Court concludes that the investigations here were all conducted pursuant to the same kind of framework that other courts have consistently found to be discretionary and within the scope of § 2680(a). Army Regulations 195-1 and 195-2 set out general policies for criminal investigations which necessarily require discretion on the part of the investigators, including when they gather information and make recommendations for appropriate action. The Manual for Courts Martial, in particular Rule 303 discussed at oral argument, incorporates a similar set of investigative responsibilities. Finally, Army Regulations 15-6, 20-1, 27-20, and 195-5, with varying degrees of specificity, outline procedures which can be carried out only through the exercise of judgment by the investigator.

Thus, the two criteria for applying the discretionary-function exception are met by the facts pleaded in this case. First, Salafia has not identified any provision in the regulations provided to the Court which compelled a particular outcome to the investigations of his

allegations of misconduct by Pearson, nor is there any basis on which to conclude that the investigation did not involve "element[s] of judgment or choice." *Berkovitz*, 486 U.S. at 536. Second, as the many cases cited above illustrate, the investigations undertaken pursuant to Army regulations involved the type of discretion intended to be "shield[ed]" by § 2680(a). *Gaubert*, 499 U.S. at 322–23. Thus, whether or not the Army investigators named by Salafia executed their responsibilities negligently—and whether or not they, as Salafia contends, reached the wrong conclusion—their actions cannot be challenged pursuant to the FTCA.

### B. Constitutional Claims

The remaining issue is how to construe Salafia's constitutional claims, mindful of the latitude to which a *pro se* plaintiff is entitled at the pleading stage. In his amended complaint, Salafia alleges that "the negligent acts or omissions engaged in by personnel of the Army, while conducting a so-called investigation of plaintiff's CID complaint and FTCA," constituted violations of his equal-protection and due-process rights under the Connecticut Constitution. (Am. Compl. ¶¶ 200–201.) If Salafia is asserting these claims via the FTCA, they are subject to the discretionary-function bar because they are premised on the same investigative conduct discussed above. And because the FTCA is the exclusive remedy for state-law torts by government employees acting with the scope of their employment, Salafia's allegations under the state constitution cannot stand as separate, stand-alone claims. 28 U.S.C. § 2679(b); *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994); *see also McCabe v. Macaulay*, 450 F. Supp. 2d 928, 939–40 (N.D. Iowa 2006)

(including state constitutional claims within the exclusivity provision). Therefore, Salafia's claims under the Connecticut Constitution must be dismissed.

Salafia also alleges that the investigations he challenges "permitted [him] to lose his property without the protections afforded to [him] by Due Process standards" and "also denied [him] the equal protection of the law as set out in the FTCA and the United States Constitution." (Am. Compl. ¶¶ 171–72.) However, because the FTCA's "waiver of sovereign immunity . . . is limited to suits predicated upon a tort cause of action cognizable under state law," *Contemp. Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 105 n.8 (2d Cir. 1981), Salafia cannot use the FTCA as a vehicle for asserting his federal due-process and equal-protection claims. *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under § 1346(b) for [federal] constitutional tort claims.") Furthermore, to the extent Salafia's federal constitutional claims are independent of those brought under the FTCA, he has failed to state claims upon which relief may be granted: his allegations do not provide a factual basis for concluding that the actions of the Army personnel deprived him of a protected property or liberty interest without due process, nor that the conduct of government agents constituted an impermissible classification which violated his right to equal protection of the laws. Consequently, Salafia's federal constitutional claims must be dismissed as well.

**III.    Conclusion**

Accordingly, the Government's Motion to Dismiss [Doc. # 21] is granted. The Clerk is directed to close this case.

IT IS SO ORDERED.

                                                    /s/
                                           Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 26th day of September, 2008.